01

02

03

04

05

06

07

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

08 RICHARD A. CASE,                                    )    CASE NO. C05-2073-JCC
                                                       )
09          Plaintiff,                                 )
                                                       )
10     v.                                              )    REPORT AND RECOMMENDATION
                                                       )
11 TERI HANSEN, et al.,                                )
                                                       )
12          Defendants.                                )
   _____                 )

13

14                                    Introduction

15          Plaintiff Richard A. Case proceeds *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983

16 civil rights matter.  Plaintiff alleges that his civil rights under the First, Fourth, Fifth, Sixth, and

17 Fourteenth Amendments to the United States Constitution were violated by the conditions and

18 procedures at the King County Department of Adult and Juvenile Detention's (DAJD) Regional

19 Justice Center (RJC) in Kent, WA.  (Dkt. 6.)  He names Teri Hansen, Bob Erickson, Sue Belt, and

20 Stephanie Murray, all current or former RJC officers responsible for plaintiff's classification, as

21 defendants.

22          Defendants filed a motion for summary judgment and dismissal of plaintiff's claims.  (Dkt.

01 | 22.)  Because plaintiff was thrice transferred following the filing of defendants' motion and went

02 | without access or had only limited access to his legal documents for certain periods of time, the

03 | Court granted plaintiff five extensions of time to reply to this dispositive motion.  (*See* Dkt. 43

04 | (summarizing the history of this case.))  However, despite these generous extensions, plaintiff

05 | failed to submit a timely objection to defendants' motion.  The Court deems plaintiff's failure to

06 | oppose to be an admission that defendants' motion has merit.  *See* Local Rule 7(b)(2).  At the

07 | same time, the Court takes note in this Report and Recommendation of assertions plaintiff made

08 | in an affidavit previously submitted in support of a motion for a continuance.  (*See* Dkt. 39.)

09 |       Having considered the papers and pleadings submitted by the parties, as well as the balance

10 | of the record in this matter, it is recommended that defendants' motion be granted and this matter

11 | be dismissed.

12 | Proposed Findings of Fact

13 |       Plaintiff submitted his complaint on December 14, 2005 as a pretrial detainee at the RJC.

14 | (Dkt. 1, Attach. 1.)  On July 7, 2006, plaintiff was convicted and sentenced in King County

15 | Superior Court for the crime of second-degree murder.  (Dkt. 22, Attach. 1.)

16 |       Upon entering the RJC as a pretrial detainee in February 2003, RJC staff designated

17 | plaintiff an "administrative segregation" and "close custody" inmate.  (Dkt. 23 at 2.)  An

18 | administrative segregation designation results from a determination that an inmate must be

19 | separated from other inmates for reasons including legal, behavioral, protective custody, pre- or

20 | post-disciplinary segregation, or ultra security.  (*Id.* at 1-2.)  RJC submits that it designated

21 | plaintiff as an administrative segregation inmate "because he had been booked on a high profile

22 | homicide investigation and had made threats towards officers while in court[.]" (*Id.* at 2.) Plaintiff

REPORT AND RECOMMENDATION
PAGE -2

01 disputes the contention that he made any such threats. (*See* Dkt. 39 at 2.)  A close custody

02 designation reflects a security level generally given to inmates booked on a very serious charge,

03 such as homicide, and/or those with a significant criminal history, usually including prison time.

04 (Dkt. 23 at 2.)  RJC initially housed plaintiff, as an administrative segregation inmate, in unit "N-

05 East."  (*Id.* at 1-2.)  Plaintiff signed a behavior management contract, wherein he agreed not to

06 threaten or harm anyone and that a violation of the contract would result in an ultra security

07 placement.  (*Id.* at 2.)

08         On March 14, 2003, the RJC removed plaintiff from administrative segregation status and

09 transferred him to "D-unit."  (*Id.* at 3.)  On April 20, 2004, the RJC gave plaintiff the opportunity

10 to transfer to a "medium" custody unit, but he declined, stating, according to defendants, that "he

11 had become acclimated to the structure of D-Unit, the unit's operations, and required the privacy

12 that the unit offered to prepare for his trial, [in which he was proceeding pro se.]"  (*Id.* at 3.)[1]

13         On January 11, 2005, the RJC again gave plaintiff another opportunity to move to a

14 medium custody unit, an "override" of security level for good behavior, and transferred him to "E-

15 Unit."  (*Id.* at 3.)  However, on March 4, 2005, defendant Hansen, Corrections Program

16 Supervisor at the RJC, revoked the override after plaintiff received an infraction for refusing

17 orders to share his cell with another inmate.  (*Id.* at 3.)  Plaintiff maintained his right to a single

18 cell based on his *pro se* status in his pending criminal trial, but, at the time, the RJC double bunked

19 all medium custody units due to population needs.  (*Id.* at 3.)  Ultimately, following the revocation

20 of the override, plaintiff returned to D-Unit.  (*Id.*, Ex. B.)

21

22         [1] *But see infra* n. 3.

REPORT AND RECOMMENDATION
PAGE -3

01         On July 27, 2005, RJC staff infracted plaintiff for possession of contraband.  (*Id.* at 3 and

02 Dkt. 24, Attach. A.)  Plaintiff claimed the substance at issue was instant coffee in an altered state,

03 but it field tested positive for methamphetamine.  (*Id.*)  The disciplinary hearing officer, defendant

04 Erickson, held a hearing on July 29, 2005. (Dkt. 24 at 1 and Ex. A.)  The RJC found further tests

05 warranted and sent the substance to a lab for testing.  (*Id*. at 2.)  Erickson postponed any sanctions

06 pending the test results, but nonetheless found plaintiff guilty of possessing contraband because,

07 even if the substance was instant coffee, it would still be considered contraband by alteration

08 because it was not recognizable as something DAJD sold or distributed.  (*Id.* at 2-3 and Ex. A.)

09 The lab results ultimately confirmed the substance was instant coffee.  (Dkt. 23 at 3.)  Because

10 Erickson had by then been assigned to the King County Correctional Facility, another classification

11 staff member sanctioned plaintiff to a loss of programming for at least thirty days.  (*Id.* at 4 and

12 Dkt. 24 at 3.)[2]

13         In April 2006, the RJC gave plaintiff another opportunity for an override to medium

14 custody due to a conflict plaintiff had with another inmate in D-Unit.  (*Id.*)  Plaintiff declined the

15 override and remained in D-Unit. (*Id.*)

16         According to defendants, plaintiff received a total of twelve infractions during his stay at

17 the RJC.  (Dkt. 23 at 3 and Ex. B.)

18         <u>Proposed Conclusions of Law</u>

19         Summary judgment is appropriate when "the pleadings, depositions, answers to

20 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

21 _____

22    [2] Plaintiff claims the imposition of a sixty-day sanction for this incident. (Dkt. 39 at 5.) However, any dispute over this issue is not material.

REPORT AND RECOMMENDATION
PAGE -4

01  genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

02  of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving

03  party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

04  showing on an essential element of his case with respect to which he has the burden of proof.

05  *Celotex*, 477 U.S. at 322-23.  "[A] party opposing a properly supported motion for summary

06  judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific

07  facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

08  242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

09          Plaintiff here pursues claims pursuant to 42 U.S.C. § 1983, which requires an allegation

10  of the violation of a right secured by the Constitution and laws of the United States, and a showing

11  that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*,

12  487 U.S. 42, 48 (1988).  Plaintiff argues that defendants violated his civil rights in denying him

13  the right to free exercise of religion, denying him due process, restricting his access to the courts

14  and to intimate familial association, and retaliating against him for the exercise of his constitutional

15  rights.  However, for the reasons described below, the Court finds defendants entitled to summary

16  dismissal of these claims.

17  A.      Free Exercise of Religion

18          Prisoners retain their First Amendment right to the free exercise of religion.  *Allen v.*

19  *Toombs*, 827 F.2d 563, 566 (9th Cir. 1987).  However, in order to establish a violation of this

20  right, plaintiff must show defendants "burdened the practice of his religion, by preventing him from

21  engaging in conduct mandated by his faith, without any justification reasonably related to

22  legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir.1997) (internal

01  footnote omitted) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).   In assessing the

02  reasonableness of the challenged conduct, the Court looks to, *inter alia*, whether there is a logical

03  connection between the regulation at issue and a legitimate government interest, whether

04  alternative means to exercise the asserted right exist, and the impact the requested accommodation

05  would have on prison resources.  *Id*. (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350-52

06  (1987) (citing *Turner*, 482 U.S. at 84-89.))   "In order to reach the level of a constitutional

07  violation, the interference with one's practice of religion 'must be more than an inconvenience; the

08  burden must be substantial and an interference with a tenet or belief that is central to religious

09  doctrine.'" *Id*. at 737 (quoting *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)).

10       Plaintiff alleges defendants violated his right to freely exercise his religion by not allowing

11  him to attend religious services while in D-Unit.  He notes that, while inmates may individually

12  meet with a chaplain and that some type of other services were provided sporadically for a limited

13  time period, there is no organized group religious service available in D-Unit.

14       However, plaintiff provides no evidence his faith mandates weekly attendance at group

15  worship services.  In fact, plaintiff fails to even specify his religion.  Nor does plaintiff explain how

16  the other opportunities provided D-Unit inmates for practicing their religious beliefs, including

17  access to individual religious counseling, do not suffice to meet the mandates of his faith.  *See,*

18  *e.g., Zatko v. Rowland*, 835 F. Supp. 1174, 1177 (N.D. Cal. 1993) (finding legitimate penological

19  interests for denying inmate access to group religious services and noting inmate could "worship

20  by other means such as choosing a religious advisor from one of many denominations or

21  possessing religious literature in his cell.")  Finally, as noted by defendants, to the extent plaintiff

22  refused overrides to medium custody units, he chose to remain in a unit with no access to group

REPORT AND RECOMMENDATION
PAGE -6

01  religious services.[3]  For all of these reasons, summary judgment should be granted to defendants

02  with respect to plaintiff's free exercise of religion claim.

03  B.    Due Process

04        Plaintiff appears to raise both substantive and procedural due process claims, the latter

05  relating to his conditions of confinement and the former to both his classification as a close

06  custody and administrative segregation inmate and to the incident in which he was found guilty

07  of possessing contraband.  As discussed below, the Court finds summary judgment warranted on

08  these claims based on plaintiff's failure to establish any violation of his right to due process.

09        1.    Conditions of Confinement:

10        Plaintiff's allegation as to unlawful conditions of confinement poses a substantive due

11  process claim.  In support of this claim, plaintiff points to the limited time allowed out of his cell

12  per day (one hour in administrative segregation and three hours in D-Unit), being fed through a

13  slot in the door, bright fluorescent cell lighting for some seventeen hours a day, limited access to

14  television, limited clothing and the lack of laundry services or detergent, the small area provided

15  for exercising and playing basketball and the few recreational options available, lack of religious

16  services, lack of pillows and condition of bed mattresses, and the lack of microwaves, movies, and

17  programming and training as provided in other units.

18  _____

19        [3] Plaintiff asserts that "[c]lassification informed [him] that his housing assignment would

20  never change while at RJC[,] D-unit or "the hole" [(an administrative segregation unit)] were the
     only units available to the plaintiff." (Dkt. 6 at 7.)  However, the documents cited by plaintiff in
     support do not bear out this contention. (*Id.*, Ex. D.)  In fact, other documents attached by

21  plaintiff to his complaint, as well as documents provided by defendants, disprove this contention
     by verifying plaintiff's placement in the medium security E-Unit. (*See, e.g.*, *id.*, Exs. E & I and

22  Dkt. 23, Exs. A & B.)

REPORT AND RECOMMENDATION
PAGE -7

01    The Eighth Amendment prohibits the cruel and unusual punishment of prisoners, while the

02 punishment of pretrial detainees is prohibited by the Fourteenth Amendment. *Bell v. Wolfish*, 441

03 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to

04 an adjudication of guilt in accordance with due process of law.") Because plaintiff was a pre-trial

05 detainee at the time of the events at issue in this case, his substantive due process claim is reviewed

06 under "'the more protective fourteenth amendment standard.'" *Jones v. Blanas*, 393 F.3d 918, 931

07 (9th Cir. 2004) (quoting *Gary H. v. Hegstrom* , 831 F.2d 1430, 1432 (9th Cir. 1987)). *But cf.*

08 *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) ("Because pretrial detainees' rights under

09 the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment,

10 however, we apply the same standards.")

11    The test for identifying unconstitutional punishment at the pretrial stage of a criminal

12 proceeding requires a court to examine "whether there was an express intent to punish, or

13 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable

14 for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'"

15 *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 538). "For a

16 particular governmental action to constitute punishment, (1) that action must cause the detainee

17 to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to

18 punish the detainee." *Id.* at 1029. Further, "to constitute punishment, the harm or disability

19 caused by the government's action must either significantly exceed, or be independent of, the

20 inherent discomforts of confinement." *Id.* at 1030.

21    "[M]aintaining institutional security and preserving internal order and discipline are

22 essential goals that may require limitation or retraction of the retained constitutional rights of both

REPORT AND RECOMMENDATION
PAGE -8

01  convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 546. *Accord Jones*, 393 F.3d at 932

02  ("Legitimate, non-punitive government interests include ensuring a detainee's presence at trial,

03  maintaining jail security, and effective management of a detention facility.")   Moreover,

04  corrections administrators "should be accorded wide-ranging deference in the adoption and

05  execution of policies and practices that in their judgment are needed to preserve internal order and

06  discipline and to maintain institutional security." *Bell*, 441 U.S. at 547.

07      It is undisputed that both administrative segregation and the D-Unit are more restrictive

08  than other units at the RJC.  As described by defendants, plaintiff was designated an administrative

09  segregation inmate "because he had been booked on a high profile homicide investigation and had

10  made threats towards officers while in court[.]" (Dkt. 23 at 2.)   Again, plaintiff disputes the

11  contention that he made any such threats.  (*See* Dkt. 39 at 2.)  However, whether or not plaintiff

12  made any threats, he was unquestionably subject to a homicide investigation.  This fact alone

13  supports the RJC's decision to designate plaintiff an administrative segregation and close custody

14  inmate.  (*See* Dkt. 23 at 1-2.)

15      Moreover, the restrictions contested by plaintiff here, including lock down for extensive

16  time periods and in-cell meals, appear reasonably related to the legitimate purpose of maintaining

17  security, safety, and order, and do not appear to significantly exceed the inherent discomforts of

18  confinement.  *See, e.g., Frost*, 152 F.3d at 1130 (rejecting pretrial detainee's claim that he was

19  improperly classified as a close custody inmate in light of deference to be accorded to prison

20  officials in adopting policies and practices needed to preserve internal order, discipline, and

21  security); *Chilcote v. Mitchell*, 166 F. Supp. 2d 1313, 1315, 1318 (D. Or. 2001) (confinement of

22  pretrial detainees in cramped, triple-bunked cells for 20 to 21 hours a day did not rise to the level

REPORT AND RECOMMENDATION
PAGE -9

01   of a constitutional violation in the face of the population-based needs and security concerns).

02   Also, plaintiff fails to explain how the absence of group religious services, particularly given the

03   undisputed availability of individual religious counseling, constitutes unconstitutional punishment.

04   Plaintiff also fails to elaborate as to how the variety of other conditions challenged – from limited

05   television access to a lack of microwaves – could be conceived as rising to the level of

06   unconstitutional punishment.    *Cf. Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)

07   (institution complies with the Eighth Amendment in providing sentenced prisoners with "'adequate

08   food, clothing, shelter, sanitation, medical care, and personal safety.'") (quoted source omitted).

09   Finally, the Court again takes note that, despite his allegation of unlawful conditions of

10   confinement, plaintiff apparently chose to remain in the more restrictive D-Unit on more than one

11   occasion.

12       In sum, plaintiff fails to proffer more than conclusory assertions that the conditions in the

13   RJC housing units at issue constitute impermissible punishment of pretrial detainees.  Accordingly,

14   plaintiff's substantive due process claim should be dismissed.[4]

15       2.   Classification:

16       The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only

17   when a constitutionally protected liberty or property interest is at stake.  *Ingraham v. Wright*, 430

18   U.S. 651, 672 (1977).  Liberty interests protected by the Fourteenth Amendment may arise from

19   _____

20       [4] Plaintiff also asserts in the affidavit in support of a motion for a continuance that the
     "Nora-East" Unit and D-Unit are utilized to coerce inmates into guilty pleas.  (*See* Dkt. 39 at 2.)
21   To the extent this assertion implicates the validity of plaintiff's conviction or sentence, such a claim
     is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  Moreover, plaintiff fails to provide
22   any support for this conclusory assertion.  In fact, plaintiff did not accept a guilty plea, rather, he
     was found guilty at trial.  (*See* Dkt. 22, Attach. 1.)

01   either the Due Process Clause itself or from state laws.  *Meachum v. Fano*, 427 U.S. 215, 223-27

02   (1976).  Here, without reference to any state law, plaintiff challenges his classification as an

03   administrative segregation and close custody inmate without due process of law.  However, a

04   prisoner does not have a constitutional right to a particular classification status.  *Hernandez v.*

05   *Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (citing *Moody v. Daggett*, 429 U.S. 78 (1976)).

06   As such, plaintiff's claim regarding his classification necessarily fails.

07        3.    <u>Contraband Incident</u>:

08        Plaintiff also asserts a violation of his right to procedural due process with respect to the

09   contraband incident.[5]  He claims he was found guilty without a hearing.  (*See* Dkt. 6 at 10-11.)

10        As described above, after a positive methamphetamine result for a substance plaintiff

11   claimed to be instant coffee, he was infracted and given a disciplinary hearing.  (Dkt. 24 at 1-2.)

12   Defendant Erickson postponed any sanction, but found plaintiff guilty of possessing contraband

13   because, even if the substance was instant coffee, it would still be considered contraband by

14   alteration because it was not recognizable as something DAJD sold or distributed.  (*Id*. at 2-3.)

15   When further testing confirmed the substance was instant coffee, an RJC staff member sanctioned

16   plaintiff to a loss of programming for at least thirty days.  (Dkt. 23 at 3.)[6]

17        Defendants argue that plaintiff is barred from pursuing this claim because he failed to

18   exhaust his administrative remedies by filing an appeal.  As stated by the Prison Litigation Reform

19

20        [5] To the extent plaintiff intended to raise any procedural due process claims regarding other
21   incidents during his time at the RJC, the undersigned agrees with defendants that his complaint
     lacks the necessary specificity for the Court to consider such claims.

22        [6] *See supra* n. 2.

REPORT AND RECOMMENDATION
PAGE -11

01  Act (PLRA): "No action shall be brought with respect to prison conditions under section 1983 of

02  this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

03  facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

04  *See also Jones v. Bock*, ___ U.S. ___, 127 S.Ct. 910, 918-19 (2007) ("There is no question that

05  exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in

06  court.")  The PLRA does not define "prison conditions," but the Supreme Court has held that "the

07  PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve

08  general circumstances or particular episodes, and whether they allege excessive force or some

09  other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

10        Defendant Erickson asserts that, after he informed plaintiff of his finding, plaintiff expressly

11  declined to file an appeal:  "I informed Mr. Case that I found him guilty of the infraction and

12  proceeded to ask him whether he wanted to appeal the finding.  He abruptly responded, "Fuck No,

13  I am going to sue all of you."  (Dkt. 24 at 3.)  Plaintiff denies making such a statement, but does

14  not assert or otherwise support a contention that he did exhaust his administrative remedies.  (*See*

15  Dkt. 39 at 3-5.)  Because it appears plaintiff failed to exhaust his administrative remedies, this

16  claim should be dismissed.

17        Moreover, even if plaintiff had exhausted his administrative remedies, he fails to establish

18  any violation of his procedural due process rights with respect to this incident.  In  *Wolff v.*

19  *McDonnell*, 418 U.S. 539, 563-69 (1974), the United States Supreme Court outlined the minimum

20  procedures required in the face of disciplinary charges.  The Court found that due process

21  requires, *inter alia*, a written statement – addressing the charges, a description of the evidence,

22  and an explanation for the action taken – at least twenty-four hours prior to the disciplinary

01  hearing, that written record be made of the proceedings, and the opportunity to present

02  documentary evidence and call witnesses, unless such an allowance would interfere with

03  institutional security.  *Id.  See also Mitchell v. Dupnik*, 75 F.3d 517 523-26 (9th Cir. 1996)

04  (describing applicability of *Wolff* to pretrial detainees).

05          Plaintiff fails to allege any facts supporting the contention that the procedures outlined in

06  *Wolff* were not met in this case.  In fact, documents submitted by defendants demonstrate that

07  plaintiff received a copy of the infraction on July 27, 2005, had a hearing on July 29, 2005 of

08  which a written record was made, and did not request any witnesses.    [7]  (*See* Dkt. 24, Ex. A.

09  ("Inmate Infraction Report Disciplinary[/] Hearing", "Rule Infraction Report", and "Disciplinary

10  Check List & Statement" signed by plaintiff.))  Accordingly, this claim may also be properly

11  dismissed on the merits.[8]

12  C.      Access to Courts

13          In his complaint, plaintiff states that "[t]he restrictions inherent to administrative

14  segregation has negatively impacted [his] access to the courts[,]" and that "[t]he disciplinary

15  actions imposed by the defendants have adversely affected [his] trial preparation, as pro se." (Dkt.

16  6 at 12.)  He also makes reference to an incident in which his legal materials were seized from his

17  cell.  (*Id*. at 9.)  In the affidavit in support of a motion for a continuance, plaintiff points to the

18  difficulty he encountered in gaining recognition as a *pro se* litigant, asserts defendant Hansen's

19  ──────────────

20          [7] Plaintiff's assertion that inmates are not allowed or are otherwise prevented from
    obtaining witnesses (*see* Dkt. 39 at 6) is no more than conclusory.

21          [8] Having found plaintiff failed to exhaust his administrative remedies and is otherwise
    entitled to no relief with respect to this claim, the Court declines to reach defendants' additional
22  argument that plaintiff lacks standing to bring this claim.

REPORT AND RECOMMENDATION
PAGE -13

01  interference with his access to the courts, including matters relating to the boxes in which he kept

02  his legal materials, and maintains that court documents would clearly show the effects defendants'

03  actions had on his trial preparation and outcome. (Dkt. 39 at 6.)

04      While inmates have a constitutional right of access to the courts, *Bounds v. Smith*, 430

05  U.S. 817, 821 (1977), they must show actual injury in order to pursue an access to courts claim,

06  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).   An inmate must demonstrate that alleged

07  shortcomings in the prison's legal access scheme hindered, or were hindering, his ability to pursue

08  a non-frivolous legal claim, *see Lewis*, 518 U.S. at 354-55, and/or provide specific examples in

09  which he "'was actually denied access to the courts[,]'" *Allen v. Sakai*, 48 F.3d 1082, 1090 (9th

10  Cir.1994) (quoted source omitted).   Also, delays in providing legal materials or assistance that

11  result in actual injury are "not of constitutional significance" if "they are the product of prison

12  regulations reasonably related to legitimate penological interests[.]"   *Lewis,* 518 U.S. at 362.

13      In this case, plaintiff fails to satisfy the Court that he suffered any actual, concrete injury

14  to his right of access.  Instead, his claims are wholly conclusory.  Even with respect to the more

15  specifically described issues, including the seizure of his legal materials, plaintiff points to no actual

16  resulting injury.   Accordingly, because plaintiff fails to adequately allege a cause of action for

17  deprivation of his right of access to the courts, defendants are entitled to summary dismissal of this

18  claim.[9]

19  / / /

20

21      [9] Having found plaintiff failed to demonstrate actual injury, the Court declines to reach
    defendants' additional argument that res judicata bars plaintiff from litigating the removal of his
22  legal materials.

REPORT AND RECOMMENDATION
PAGE -14

D.      Familial Association

The Ninth Circuit describes the right to intimate association as follows:

During the period of confinement in prison, the right of intimate association, a fundamental element of personal liberty, is necessarily abridged. Intimate association protects the kinds of relationships that attend the creation and sustenance of a family-marriage, childbirth, the raising and education of children, and cohabitation with one's relatives. The loss of the right to intimate association is simply part and parcel of being imprisoned for conviction of a crime.

Many aspects of marriage that make it a basic civil right, such as cohabitation, sexual intercourse, and the bearing and rearing of children, are superseded by the fact of confinement. Thus, while the basic right to marry survives imprisonment, most of the *attributes* of marriage – cohabitation, physical intimacy, and bearing and raising children – do not.

*Gerber v. Hickman*, 291 F.3d 617, 620-21 (9th Cir. 2002) (internal citations, quotation marks, brackets, and ellipses omitted).

In this case, plaintiff alleges that "[t]he restrictions inherent to administrative segregation has negatively impacted [his] ... right to intimate famalial (sic) association."  (Dkt. 6 at 12.) However, plaintiff does not indicate *how* this right has been violated.  Instead, he merely makes the above-stated conclusory allegation.  Accordingly, summary judgment should be granted with respect to plaintiff's intimate association claim.

E.      Retaliation

Plaintiff alleges defendants retaliated against him in response to his grievances, attack on the seizure of his legal material, and challenges to disciplinary measures imposed.  Defendants dispute that plaintiff was ever classified, housed, or disciplined as a result of retaliation.

Plaintiff has a First Amendment right to utilize prison grievance procedures. *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995).  To prevail on a retaliation claim under § 1983,

REPORT AND RECOMMENDATION
PAGE -15

01    however, plaintiff must show he was retaliated against for exercising his constitutional rights, that

02    the retaliatory action chilled the exercise of his First Amendment rights, and that the retaliatory

03    action did not advance legitimate penological goals, such as preserving institutional order and

04    discipline. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Resnick v. Hayes*, 213 F.3d

05    443, 449 (9th Cir. 2000); *Barnett v. Centoni.* 31 F.3d 813, 816 (9th Cir. 1994).  Also, the Court

06    evaluates a retaliation claim in light of the deference accorded prison officials. *Pratt v. Rowland*,

07    65 F.3d 802, 807 (9th Cir. 1995).

08        In this case, plaintiff's allegation of retaliation is generalized and conclusory.  He fails to

09    show that any actions taken by defendants did not advance legitimate penological goals, such as

10    preserving institutional order and discipline. *See Pratt*, 65 F.3d at 806 ("The plaintiff bears the

11    burden of pleading and proving the absence of legitimate correctional goals for the conduct of

12    which he complains.") Nor does plaintiff show that his First Amendment rights were in any way

13    chilled by the actions of defendants. *See Resnick*, 213 F.3d at 449.  As such, plaintiff's retaliation

14    claim should be dismissed.

15                          <u>Conclusion</u>

16        For the foregoing reasons, this Court recommends that defendants' motion for summary

17    judgment be GRANTED, and this matter be DISMISSED with prejudice.  A proposed order

18    accompanies this Report and Recommendation.

19        DATED this <u>30th</u> day of March, 2007.

20

21                          Mary Alice Theiler
                         United States Magistrate Judge

22

REPORT AND RECOMMENDATION
PAGE -16